UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

OSCAR ESPINAL PLAINTIFF

v. CIVIL ACTION NO. 3:09-CV-861

DALE E. WRIGHT, *et al.* DEFENDANTS

**MEMORANDUM OPINION**

This case is before the court on defendant Milan Express Company, Inc.'s motion for partial summary judgment on plaintiff Oscar Espinal's claims for negligence per se, for negligent hiring, retention, and supervision, and for punitive damages (DN 47). For the reasons herein, that motion will be granted.

**BACKGROUND**

The dispute in this case arose from a motor vehicle accident between Espinal and defendant Dale Wright. In the early morning of April 16, 2008, Wright was driving a tractor-trailer owned by Milan Express, which was Wright's employer. Espinal was driving a GMC box truck and towing an Isuzu box truck behind him. At approximately 3:33 a.m., on southbound Interstate 65 in Bullitt County, Kentucky, Wright's vehicle collided with Espinal's vehicle. The parties dispute the specifics of what occurred during the collision. However, the parties do not dispute that Wright was acting within the scope of his employment for Milan Express at the time of the accident.

Espinal filed a complaint against Wright and Milan Express in Bullitt County, Kentucky, Circuit Court, alleging claims against both for negligence and negligence per se, and against

Milan Express for negligent hiring, entrustment, and retention. Espinal sought damages, including punitive damages, from both parties. The defendants removed to this court on the basis of its diversity jurisdiction. Thereafter, the parties agreed to a joint stipulation of dismissal of the claims against Wright. After the claims against Wright were dismissed, Espinal filed an amended complaint. In his amended complaint, Espinal alleged the same claims, against both defendants, that he had in his initial complaint, this time providing more detail regarding his claims.

Milan Express has now moved for partial summary judgment on Espinal's claims for negligence per se, for negligent hiring, retention, and supervision, and for punitive damages. Milan Express also requests that, to the extent independent claims against Wright remain pending, they be dismissed.

## ANALYSIS

### I. The Claims Against Milan Express

#### A. Standards of Review for Summary Judgment Motions

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which a jury could reasonably find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). The evidence

must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

B. The Negligence Per Se Claim

In his amended complaint, Espinal raised a claim against Milan Express for negligence per se. Espinal alleged that Wright, while acting within the scope of his employment for Milan Express, violated subpart G of part 383 the Federal Motor Carrier Safety Regulations ("FMCSRs"). Milan Express contends that it is entitled to summary judgment on that claim on the ground that subpart G of part 383 of the FMCSRs pertains to the knowledge and skills that states have to test for in administering Commercial Driver's License ("CDL") exams. Milan Express argues that since Wright had a valid CDL issued by Tennessee, Wright did not violate the regulations, and thus the negligence per se claim must be dismissed.

The stated purpose of part 383 of the FMCSRs is "to help reduce or prevent truck and bus accidents, fatalities, and injuries by requiring drivers to have a single commercial motor vehicle driver's license and by disqualifying drivers who operate commercial motor vehicles in an unsafe manner." 49 C.F.R. § 383.1(a). Thus, relevant here, part 383 "[e]stablishes testing and licensing requirements for commercial motor vehicle" ("CMV") operators and "[r]equires States to give knowledge and skill tests to all qualified applicants for commercial drivers' licenses which meet the Federal standard." 49 C.F.R. § 383.1(b)(6), (7). Consistent with that, part 383 provides, "No person shall operate a commercial motor vehicle unless such person has taken and passed written and driving tests for a . . . CDL that meet the Federal standards contained in

subparts F, G, and H of this part for the commercial motor vehicle that person operates or expects to operate." 49 C.F.R. § 383.23.

Subpart G of part 383 of the FMCSRs is entitled "Required Knowledge and Skills." The first section of that subpart provides, "All drivers of CMVs must have the knowledge and skills necessary to operate a CMV safely as contained in this subpart. The specific types of items that a State must include in the knowledge and skills tests that it administers to CDL applicants are included in this subpart." 49 C.F.R. § 383.110. The next section of subpart G specifies 20 general areas of which CMV operators "must have knowledge." 49 C.F.R. § 383.111.

Espinal contends that Wright violated the section describing those 20 general areas of knowledge. Specifically, Espinal contends that Wright violated the "Visual Search" area of knowledge by "fail[ing] to maintain proper visual search, and proper visual search methods." He further claims that Wright violated the "Communication" area of knowledge by "fail[ing] to maintain proper principal and procedures for communication and the hazards of failure to signal properly." He makes similar claims concerning the "Speed Management," "Space Management," "Night Operation," "Hazard Perceptions," and "Emergency Maneuvers" areas of knowledge.

This court agrees with Milan Express that the regulations pertain to the skills that states are required to test for when issuing CDLs, and consequently, the areas of knowledge that persons must have to qualify for CDLs. The plain meaning of subpart G, as well as the whole of part 383 of the FMCSRs, compels that conclusion. Notably, the Kentucky Transportation Cabinet has adopted by reference part 383 of the FMCSRs into its own regulations. 601 KAR 1:005 § 2. In doing so, the Kentucky regulation identifies part 383 of the FMCSRs as pertaining to "Commercial Driver's License Standards; Requirements and Penalties." 601 KAR 1:005 §

2(3). That the Kentucky regulations states that part 383 relates to standards for issuing a CDL further bolsters this court's conclusion that subpart G of part 383 relates only to the areas of knowledge that CDL applicants must know to obtain a CDL. Beyond that, subpart G does not set forth any other duties or standards of care. Thus, as long as Wright had knowledge of the various skills mentioned in subpart G and had a valid CDL, he was not in violation of that subsection, and that subsection cannot form the basis of a negligence per se claim relating to actions Wright took while driving.

There is no material dispute of fact as to whether Wright had knowledge of the general areas enumerated in subpart G of part 383 of the FMCSRs. Milan Express attached to its motion an exhibit showing that Wright had a valid CDL issued by Tennessee at the time of the accident. That in itself showed that Wright possessed the requisite knowledge to pass the test for a CDL. Further, during Wright's deposition, he was asked a series of questions concerning his knowledge of the areas mentioned in subpart G. He stated that, not only was he familiar with the areas of knowledge mentioned in the FMSCRs, but Milan refreshed his knowledge of them periodically. Indeed, during his deposition, Wright confirmed that he had knowledge of each of the following individual areas enumerated in subpart G: safe vehicle control, proper visual search, proper space management, proper speed management, hazard perception, and nighttime driving (Wright Dep. 70-74). Espinal has not put forth any evidence Wright was unaware of the various areas of knowledge in subpart G. Since there is no material dispute of fact that Wright was knowledgeable about the general areas of required knowledge laid out in subpart G of part 383 of the FMCSRs, Espinal's negligence per se claim will be dismissed.[1]

---

[1] In his amended complaint and his papers opposing partial summary judgment, Espinal continue...

Finally, Espinal asserts in his response to the defendant's motion for partial summary judgment that, besides violating subpart G of part 383 of the FMSCRs, defendant also violated various Kentucky statutes relating to a driver's responsibility to maintain proper spacing between his or her vehicle and vehicles ahead of him or her, and to a driver's responsibility to safely operate his or her vehicle. However, Espinal never identified a violation of those statutes in his initial or amended complaints. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); *Suppacheewa v. Madisonville Cmty. Coll.*, 2010 WL 3981224, at *8 (W.D.Ky. Oct. 8, 2010); *see Tucker v. Union of Neeedletrades, Indus., and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). Nor will this court grant Espinal's request for leave to amend his pleadings, which he makes in a footnote in his response to Milan Express's motion for summary judgment. Espinal's cursory request for leave to amend provides no reason why, at this stage of the proceedings, when discovery has been completed and Milan Express has already filed its motion for partial summary judgment, leave to amend the complaint should be given. Absent a proper motion to amend, made in accordance with this court's local rules and setting forth reasons why leave to amend should be granted, this court will deny Espinal's request.

[1]...continue
argues, in essence, that the evidence shows that Wright failed to adequately apply the areas of knowledge in subpart G. Wright's supposed failure to apply those techniques will, of course, be relevant to the jury's determination on the ultimate issue of Wright's negligence. However, his alleged failure to use the skills that he undisputedly knew about simply does not provide Espinal with a separate claim for negligence per se, since all subpart G requires is knowledge, not action.

C. The Negligent Hiring, Retention, and Entrustment Claim

In his amended complaint, Espinal raised a claim against Milan Express for negligent hiring, retention and entrustment. Espinal agrees with Milan Express that summary judgment should be granted in Milan Express's favor with respect to that claim. In Kentucky, an employer may be held liable "when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998). The elements of such a claim are : 1) "the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed," and 2) "the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citing *Flor-Shin*, 964 S.W.2d at 442).

Here, as Espinal does not dispute, his claim for negligent hiring, retention, and entrustment must be dismissed. There is no evidence showing that Milan Express knew or should have known that Wright was unfit for his job. Rather, Milan Express provided evidence showing that Wright had been a model driver prior to the instant accident and that Milan Express took appropriate steps to confirm that Wright was fit for the job. Specifically, various documents from Wright's driver file at Milan Express demonstrated that: Wright had a valid CDL issued by the state of Tennessee; Wright passed a road test given to him by Milan Express in 2005 with satisfactory marks in every listed category; Wright passed a drug test in 2007; and Wright had completed various training programs while working for Milan Express. In addition, motor vehicle reports from 2005 and 2007 showed that Wright had no moving violations. And, in Wright's deposition, he confirmed that Milan Express gave him periodic performance reviews

and that he did well on those (Wright Dep. at 69). Since there is no evidence that Milan Express overlooked or should have known about any information pertaining to Wright that would have rendered him unfit for his job, Espinal's claim for negligent hiring, retention, and entrustment will be dismissed.

D. Punitive Damages

In his amended complaint, Espinal sought punitive damages from Milan Express. Milan Express now requests summary judgment on Espinal's claim for punitive damages. Milan Express argues that there is no evidence that Wright engaged in the type of grossly negligent conduct that is necessary for an award of punitive damages. Milan Express further argues that it is entitled to summary judgment on the punitive damages claim because it did not authorize, ratify, or anticipate Wright's conduct. In response, Espinal argues that Wright operated his vehicle in a manner evincing his reckless disregard for the safety of others. He adds, in a conclusory and unsupported fashion, that because Milan Express furnished the tractor-trailer to Wright, Milan Express should be responsible for the punitive damages arising therefrom.

Under Kentucky law, punitive damages are available where a defendant has acted with a "wanton or reckless disregard for the safety of other persons." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51-52 (Ky. 2003). While the two parties dispute whether the evidence is sufficient to show that Wright engaged in the type of reckless conduct that would give rise to punitive damages, this court need not reach that issue to determine that the punitive damages claim against Milan Express should be dismissed.

Kentucky "broadly limits vicarious liability for punitive damages." *Berrier v. Bizer*, 57 S.W.3d 271, 283 (Ky. 2001). KRS § 411.184(3) states that punitive damages cannot "be assessed

against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question." "Very few cases on record have recognized vicarious liability for punitive damages." *McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 842 (W.D.Ky. 2007) (citing *Estate of Presley v. CCS of Conway*, 2004 WL 1179448, at *4 (W.D.Ky. May 18, 2004)).

The extent of Kentucky's limitation on vicarious liability for punitive damages is best demonstrated by cases applying the statute. In *Berrier v. Bizer*, 57 S.W.2d at 284, the Kentucky Supreme Court held that an employer would not be liable for punitive damages where an employee in a managerial position fired the plaintiff, purportedly in violation of various Kentucky statutes, because the employer was entirely uninvolved in the personnel decision and thus could not be said to have authorized or ratified the misconduct. And in *McGonigle v. Whitehawk*, the court found that assessing punitive damages against an employer, Bertram Drilling, would be inappropriate where the plaintiff alleged that Bertram's employee, who had two prior convictions for driving under the influence, crashed a work truck owned by Bertram into the plaintiff's vehicle while the employee was intoxicated. 481 F. Supp. 2d at 837-838, 842. The *McGonigle* court noted that the most recent of the two prior driving under the influence convictions was six and one-half years prior to the incident in question, and neither conviction occurred while the employee was working for Bertram. *Id.* at 842. Thus, the court held that the plaintiff had not demonstrated that Bertram should have anticipated the conduct of the employee. *Id.*; *see also Estate of Presley*, 2004 WL 1179448, at *4 (trucking companies not liable for punitive damages arising from accident between truck drivers employed by the companies and

the plaintiff, because there was no evidence that the companies authorized unsafe driving, ratified any traffic violations, or should have anticipated the accident).

Here, even assuming arguendo that Wright was grossly negligent, this court must dismiss the punitive damages claim against Milan Express. Espinal has not presented any evidence showing that Milan Express authorized, ratified, or should have anticipated Wright's allegedly reckless conduct. As discussed above, Espinal does not dispute that his claim for negligent hiring, retention, and entrustment must be dismissed because all the evidence that was submitted to this court showed that Wright was a model driver and that there was nothing to put Milan Express on notice that Wright might be unfit for his job as a truck driver. Thus, it is impossible to see how Milan Express should have anticipated that Wright would act with a "wanton or reckless disregard for the safety of other persons." *Phelps*, 103 S.W.3d at 52. Nor has Espinal pointed to any conduct by Milan Express that could be said in any way to have authorized or ratified Wright's alleged misconduct. Therefore, Espinal's claim for punitive damages from Milan Express will be dismissed.

**II. The Claims Against Wright**

Finally, this court construes Milan Express's request to dismiss the claims against Wright as a motion for judgment on the pleadings in accordance with Rule 12(c). Thus, this court will accept as true all well-pleaded material allegations in the amended complaint, and dismiss the claims against Wright only if it is nevertheless clear that Wright is entitled to a judgment as a matter of law. *See JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973))..

The claims against Wright in Espinal's amended complaint will be dismissed. The parties, by joint stipulation, dismissed those same claims with prejudice prior to the filing of the amended complaint. Thus, res judicata bars Espinal from reasserting those claims now. *See Montana v. United States*, 440 U.S. 147, 153 (1979) ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."); *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001) ("A voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect."). This court further notes that Espinal did not respond in any way to the request to dismiss the claims made in Milan Express's motion papers, which the court considers to be an implicit concession by Espinal that dismissal is warranted.

**CONCLUSION**

For the foregoing reasons, Milan Express's motion for partial summary judgment will be granted. Espinal's claims in his amended complaint against Milan Express for negligence per se, for negligent hiring, retention, and entrustment, and for punitive damages will be dismissed, as will all of Espinal's claims against Wright.

A separate order will issue in accordance with this opinion.

March 12, 2012

**Charles R. Simpson III, Judge**
**United States District Court**